UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| | : Criminal No. 1:06-CR-00234-HHK |
| | : |
| v. | : |
| | : |
| AFSANEH TEHRANI, | : |
| | : |
| Defendant | : |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

SUMMARY

The government concurs with the Pre-Sentence Report writer that the guideline range is 12 to 18 months because the offense level is 12 and the criminal history category is I. The placement of the defendant's sentence within that guideline range, however, should reflect the fact that the defendant is more culpable that other defendants in that range. The defendant's greater culpability is found in the fact that the loss amount is incomplete,[1] the fact that the defendant altered medical records as part of her crime, and the fact that the defendant has shown barely adequate acceptance of responsibility. Accordingly, the government recommends that the Court impose a sentence of 18 months incarceration upon defendant Tehrani.

---

[1] The parties agree that the readily provable loss exceeds $120,000 and anticipate having the exact figure of readily provable loss at the time of sentencing. The government submits, however, that the defendant's sentence within the guideline range should reflect the fact that the amount of loss has not been determined fully.

BACKGROUND

The defendant learned of the investigation into her criminal conduct on October 18, 2005, when a search warrant was executed at the office of D.C. Dentistry and approximately ten boxes of dental records were seized. On November 17, 2005, the government presented to counsel for the defendant some of the false claims which the defendant had submitted to insurance companies. Investigators discovered these false claims by comparing medical charts seized during the search to payment records of insurance companies. The comparison revealed that even though services were not documented in the medical charts at D.C. Dentistry, the insurance companies had paid claims submitted by the defendant as if the services had been provided. For example, the defendant requested payment from an insurance company for a root canal even though a subsequent x-ray included in the patient's medical record showed that no root canal had been performed.[2] In November 2005, the government offered to allow the defendant to plead guilty if she would admit to the loss amount then known to the government. At that time the loss known to the government was approximately $70,000.

The investigation that resumed after the defendant decided not to plead guilty in 2005 was impaired significantly because the investigators found many medical files had been altered. The agents found that some medical files were missing entire charts documenting the course of a patient's treatment, while other medical files were missing portions of charts and/or x-rays. The agents also found instances in which entries in medical records had been erased and/or rewritten. The altered medical records prevented the investigators from comparing entries on the medical

---

[2] On an x-ray, a root canal is obvious because of the telltale white lines which appear where the roots of the tooth have been removed.

charts to the insurance records because the medical records were missing. Accordingly, the investigators began interviewing individual patients, a lengthy process which continued through the summer of 2006. Because it was not reasonable to expect patients to remember whether minor services had been provided on particular dates in the past, the agents concentrated their inquiries upon memorable events such as installation of braces, tooth extractions, root canals, crowns, pulpotomies, and fitting for night guards. For these kinds of events, patients easily were able to recall whether they, or their children, had, for instance, braces installed, a tooth extracted, or a root canal. The interview process provided an obviously incomplete loss amount because it reflects loss only for major dental procedures.

  The patient interviews revealed that the defendant committed fraud in several ways. In some instances, the defendant would bill an insurance company for a service which had not been performed. This resulted in a single fraudulent payment to the defendant. In some instances, when a patient's insurance coverage had switched from one carrier to another, the defendant would bill both insurance companies for a service which had been performed. Again, this resulted in a single fraudulent payment to the defendant. In some instances, the defendant would bill both insurance companies even though no service had been provided. This resulted in two fraudulent payments to the defendant.

  More important than delaying the investigation, however, the defendant's conduct deprived patients of part of their medical history. The defendant did not commit her crime simply by submitting claims to insurance companies for work which was not reflected in the medical charts. The defendant hid her fraud by altering the charts themselves. She destroyed records of dental work actually performed. She altered entries in the charts, and she altered or

3

removed x-rays so that no comparison could be made between the medical records and the insurance payment records.

Over the years, the defendant has fended off some inquiries from insurance companies about her billing practices by asserting that medical files were damaged in 2003 by water leaks from the office located above D.C. Dentistry. The defendant maintained this position even though she did not request insurance compensation for destroyed files, as was permitted by her insurance policy. Although the government's investigation confirmed that water leaks damaged things like carpeting in D.C. Dentistry, the medical files upon which the prosecution rests were not damaged by water. Instead, the files were selectively altered. Tellingly, dates of services which occurred after the leak – and thus should have been included on the medical chart -- were not found on medical charts seized during the search. Similarly, several files relied upon by the government contain a single, thin piece of paper called a "Welcome Sheet." The Welcome Sheet contains information provided by the patient at the time of his or her first visit to D.C. Dentistry. The Welcome Sheet was kept in the same folder with the medical chart, which is made of reinforced paper. If water had damaged the patient file, both the Welcome Sheet and the dental chart would show the effects. Instead, for the altered files relied upon by the government, the Welcome Sheet which predates the leak is undamaged whereas the medical chart is missing in whole or in part. These dental charts are not missing because of water damage; they are missing because the defendant attempted to hide her crime by destroying the evidence which would prove that no service was performed on the date for which she submitted a claim.

At the time of the Indictment in August 2006, the amount of loss known to the government had grown to approximately $148,000. Accordingly, the government obtained a

warrant to seize $148,000 from the defendant's accounts and hold it pending forfeiture proceedings. This loss amount was based only upon the investigation completed as of that time. The government estimates that only about 10% of the medical files for patients of D.C. Dentistry have been investigated.[3]

In November 2006, the defendant accepted the government's renewed offer allowing her to plead guilty plea if she would admit to the loss amount then known to the government, which, at that time was $148,000. The plea agreement capped the defendant's maximum sentence at 18 months incarceration in part because of the possibility that additional claims of loss would be made. As anticipated, subsequent to the defendant's plea of guilty, Aetna insurance company, which is one of the victims, submitted an additional set of claims that they believed to be fraudulent but that had not been examined previously. These fraudulent medical claims raised the amount of loss to approximately $166,000.

## ARGUMENT

Although the guideline range of 12 to 18 months incarceration is presumptively reasonable, United States v. Dorcely, 454 F.3d 366, 376 (D.C. Cir. 2006), it is, in fact, quite generous given the facts of this case. In determining relative culpability of the defendant compared to others within her guideline range, the Court should sentence the defendant's at the top of the range for three reasons.

First, the loss calculation in this case is incomplete. Although the government maintains its position that the readily provable loss will be agreed upon between the parties in an amount

---

[3] Although the investigation focused on examining medical records of patients who worked for the Bureau of National Affairs (BNA), not all the records for BNA employees were examined. In addition, some records were examined for patients who did not work for BNA.

between $120,000 and $200,000, this is not the full extent of the loss.  The readily provable loss is based upon an examination of only 10% of the files in D.C. Dentistry.  Every time the investigators have undertaken an examination of additional files, they have found more fraud. It is difficult work because the medical files have been altered, but the loss amount consistently has risen the longer the case has stayed open.  Besides being difficult, the interview process also was inherently favorable to the defendant because the lack of files meant that the investigators had to limit themselves to finding fraud in a few, obvious claims such as braces which were never installed.  Given the increasing fraud found in just the obvious areas, it is inconceivable that the defendant did not also submitted false claims in more difficult to detect areas such as billing for two filings when only one was provided or cleanings which did not occur.

     The government remains fully satisfied with the plea offer and the guideline range in this case.  However, there is no basis for the defendant to claim that she should receive a sentence at the bottom of that range much less below the guideline range.  Rather, the government's request for a sentence at the top of the guideline range reflects the defendant's relative culpability as compared to others who are in her range because the full amount of their loss is known.

     Second, when considering the appropriate sentence to impose, the Court should take into account that the defendant intentionally altered medical records.  The defendant was the owner of a dental office and was responsible for billing.  She also had received an Award of Completion for a course on  Radiography for Dental Assistance (PSR at ¶ 39).  The defendant knew the importance of keeping accurate medical records.  Her conduct sets her apart from others in her guideline range who merely committed fraud.  The medical records she altered cannot be recreated.  By leaving patients without their full medical records, the defendant demonstrated that

she is more culpable than others in her guideline range. Her sentence within the range should reflect this willful and destructive behavior.

Finally, the defendant has demonstrated minimal acceptance of responsibility. The defendant was slow to plead in this case given that the essence of the government's case was disclosed to the defendant in November 2005. She could have accepted responsibility for what was known at that time and saved the government considerable more work. While it was her prerogative to put the government to the burden of investigating altered records, the defendant cannot be heard to say that she is in the same situation as those who acknowledge their wrongdoing when confronted with it prior to indictment and who seek a prompt disposition of the case. The defendant's plea of guilty reflected the fact that she accepted the inevitable result, but she did so more reluctantly than other defendants. In fact, even after the plea, the defendant contacted one of the patients who would have been a government witness. The witness reported feeling pressured because the defendant said that she was planning to sue people, demanded payment for dental work which the defendant had written off previously; and told the witness to call the defendant's attorney. The defendant also has persisted in the position that water damage explains altered medical files in which the government has found fraud. The government does not dispute the three level reduction which the defendant has received for acceptance of responsibility. However, the defendant has not merited the further reduction of being placed at the bottom of the guideline range. To the contrary, she should receive the maximum sentence within the range; a sentence of 18 months incarceration.

WHEREFORE, the government requests that the defendant be sentenced to 18 months incarceration.

Respectfully submitted,

Jeffrey A. Taylor
United States Attorney
D.C. Bar No. 498610


/s/ Attorney's Typed Signature
Thomas E. Zeno
Assistant United States Attorney
D.C. Bar No. 348623
United States Attorney's Office
555 4th Street, N.W., Room 5243
Washington, D.C.  20530
(202) 514-6957