UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | |
| v. | : | Criminal No. 1:06-CR-00079-HHK |
| AFSANEH TEHRANI, | : | |
| Defendant | : | |

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Pursuant to Fed.R.Crim.P. 32, the Defendant, Afsaneh Tehrani, through counsel, respectfully submits the following information in aid of sentencing.

I.  Introduction

The defense understands that the sentence in this case will involve some period of confinement. We respectfully submit, however, that confinement at a Federal Correctional Institution ("FCI") is unnecessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Instead, for the reasons set forth below, the defense submits that those purposes are best served by a sentence composed of: (i) a "split sentence" of confinement in the range of 8-12 months, divided between a halfway house and home detention, (ii) an appropriate fine, and (iii) an appropriate period of supervised release.

II.  Ms. Tehrani's Background and Character

Ms. Tehrani is 48 years old. She has been married for 23 years and has two children, a daughter and a son, who are 19 and 15 years old. She has a criminal history score of zero.[1] She does not consume alcohol and has never used any illegal drugs.

---

[1] Her only prior record is for concealment of merchandise 24 years ago, which does not result in any points under USSG Chapter 4.

After immigrating to the United States in 1980, Ms. Tehrani took various college courses. She attended the University of the District of Columbia and completed a Radiography for Dental Assistants course at Northern Virginia Community College in 1984. She has been steadily employed during her adult life, principally in dental offices. She worked as an employee in various offices and ultimately opened her own dental practice, DC Dentistry, in October 1997.

Ms. Tehrani is not a dentist; rather, she hires dentists and pays them a fee for their services. She operates and manages the dental clinic, markets the practice, makes appointments, handles the bookkeeping, and pays the clinic's expenses, including payroll. Ms. Tehrani is a warm, outgoing, vivacious person whose personality, enthusiasm and drive have been key ingredients to building and maintaining the practice of DC Dentistry.

Ms. Tehrani's husband, Jahangir, is a satellite communications engineer. For 25 years he was employed by Intelsat. Presently, he is a Senior Scientist with ARTEL, Inc. Mr. Tehrani has always been well compensated and the Tehranis have maintained a comfortable lifestyle.

Significantly, the Tehranis have engaged in a number of charitable works over the years. For the past four years, they have sponsored five needy children in Iran through the non-profit Child Foundation:[2] (1) Moein Kordzadeh is a blind elementary school student; (2) Taghi Ebrahimi is a high school student who is blind in one eye; (3) Hamideh Darbin is a high school student who had been a runaway; (4) Roghieh Azadi is a high school student who suffers from mental health problems; and (5) Soheila Kohandpour is a young woman who now has finished high school, but is ill. Attached hereto as Exhs. 1-5 are photographs of the children, together with status reports sent by Child Foundation and letters from the children. (The reports and letters are written in Farsi).

---

[2] *See* http://www.childfoundation.org.

2

In addition, for the past four years the Tehranis have sent an average of $200 to $350 per month to a needy family here in the United States: Lois and Von Barber, who reside at 8857 Liberia Avenue, Apt. 4, Manassas, VA 20110. Attached hereto as Exh. 6 are copies of checks written to Ms. Barber between 2003-2006 and Exhs. 7-11 are notes of appreciation sent to the Tehranis by the Barbers. The Tehranis have never met the Barbers. They heard about the Barbers from a friend who recounted the Barbers' situation, and they started sending the Barbers money to assist them.

Additional insight into Ms. Tehrani's character and personality are provided by persons who have known her well for many years. Ms. Tehrani is described as a kind, sincere and caring friend by Sheida Bashiri, who has known her for more than twenty years. Ms. Tehrani has been a special source of emotional and psychological support to Ms. Bashiri for the past six years since Ms. Bashiri was diagnosed with severe rheumatoid arthritis. A letter from Ms. Bashiri is attached. *See* Exh. 12.

Another friend, Fariba Khasraghi, who has known Ms. Tehrani for 22 years, describes her as a dynamic person, and a "loving, caring and devoted mother, wife, daughter, sister, and [] friend," and a person who is always ready to provide help and care to "any human being who needs help." *See* Exh. 13.

Yet another friend, Rocky Moretti, who has known Ms. Tehrani since the early 1990s, says she is "a loyal, dependable and thoughtful friend. Afsaneh's compassion for other people is on display on a daily basis at her dentist office, where her warmth and helpfulness is apparent in her relationship with customers and staff." *See* Exh. 14.

Ms. Tehrani's many admirable qualities and deeds do not obviate the misconduct for which the Court will sentence her but they provide a much more rounded and accurate picture of

her as a person. Unlike many defendants who come before the Court, she is not a selfish, callous or immature individual. Rather, she is fundamentally a good and decent person who has made a serious mistake in the course of conducting her business.

**III.    The Legal Framework**

After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), sentencing in federal criminal cases is guided by the seven sentencing factors that Congress specified in 18 U.S.C. § 3553(a). Those factors are:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed—

   (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)    to afford adequate deterrence to criminal conduct;

   (C)    to protect the public from further crimes of the defendant; and

   (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

The statute explicitly provides that the court shall impose a sentence "sufficient, <u>but not greater than necessary</u>," to comply with the purposes set forth in factor 2 (emphasis added).

"While the guidelines remain an important consideration in selecting a specific sentence, neither *Booker* nor the structure of the statute elevates them above the other § 3553(a) factors." *United States v. Cull*, 446 F.Supp.2d 961, 963 (E.D. Wis. 2006). Although, on appeal, a sentence within the guideline range is considered presumptively reasonable, *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006), the same is not true at sentencing. "The [sentencing] judge is not required—or indeed permitted—to 'presume' that a sentence within the guidelines range is the correct sentence and if he wants to depart give a reason why it's not correct." *United States v. DeMaree*, 459 F.3d 791, 794 (7th Cir. 2006).

IV.     Analysis

As a practical matter, many judges now follow a three-step sentencing procedure. First, the court determines the advisory guideline range. Second, the court decides whether to grant any departures. Finally, the court selects a sentence that is sufficient but not greater than necessary given all of the § 3553(a) factors.

A.      **The Sentencing Guidelines**

In this case neither side challenges the guideline calculations in the PSR, which place Ms. Tehrani at an offense level of 13 and a criminal history score of zero. The resulting guideline range is 12-18 months and falls in Zone D.

We submit that Ms. Tehrani is eligible for a downward departure for extraordinary acceptance of responsibility because she agreed, as part of the plea agreement in this case, not only to make full restitution but also to pay an additional $5,000 to reimburse the expenses of investigation incurred by the Metropolitan Life Insurance Company in this matter.[3] *See* Plea

---

[3] The costs of investigating an offense are not direct losses for which restitution can be ordered. *See, e.g., United States v. Schinnell*, 80 F.3d 1064, 1070-71 (5th Cir. 1996) (district court erred in ordering restitution of

Agreement ¶ 10. The D.C. Circuit recognized that such a downward departure is permissible under the guidelines in appropriate cases. *See United States v. Tucker*, 386 F.3d 273, 277 (D.C. Cir. 2004). In October 2003, pursuant to the PROTECT Act, the Sentencing Commission amended the guidelines to prohibit departures based on acceptance of responsibility. U.S.S.G. § 5k2.2(d)(2) (2004). However, because Ms. Tehrani's offense spanned a period of several years both before and after this amendment, she remains eligible for the departure. Moreover, her extraordinary acceptance of responsibility – beyond that necessary to obtain a two or three level reduction under U.S.S.G. § 3E1.1 – certainly can be granted additional consideration under the advisory guideline regime created by *Booker*. Courts should encourage offenders to mitigate their misconduct voluntarily. *See United States v. Milne*, 384 F.Supp.2d 1309, 1312 (E.D. Wis. 2005) (granting reduction for extraordinary acceptance of responsibility based in part on voluntary payment of restitution).

B.  **The § 3553(a) Factors**

1.  <u>Nature of the Offense</u>

The offense involved the submission of fraudulent insurance reimbursement claims over a period of approximately five years. The total loss amount has not yet been finally determined because the Government and the defense are in the process of reviewing the relevant data. The presentence report gives a loss figure of just over $166,000 that was provided by the U.S. Attorney's Office. The defense believes that the final figure will end up being less.[4] Although the offense cannot be characterized as minor or isolated, it was not aggravated – it did not

---

expenses incurred by victim to reconstruct bank statements involved in fraud); *United States v. Arvanitis*, 902 F.2d 489, 497 (7th Cir. 1990) (no restitution for fees incurred by insurance company to investigate fraudulent claim).

[4] Furthermore, in assessing the <u>ultimate</u> loss to the victims and the amount of restitution that is appropriate, account should be taken of the significant amount of legitimate insurance claims by DC Dentistry that Aetna, one of the alleged victims, did not pay after the criminal investigation started.

involve weapon possession, violence or threats, or recruitment of other individuals to participate in the offense.

### 2.  Character of the Defendant

We have discussed Ms. Tehrani's character above. She is a mature person, and a devoted wife and mother. She has a criminal history score of zero. She does not engage in any substance abuse. She is a caring and compassionate friend and a person who, together with her husband, has gone out of her way to help other persons in need. On balance, she is fundamentally a good and decent person who has made a serious mistake in conducting her business.

### 3.  Purposes of Sentencing

There is no evidence that Ms. Tehrani is dangerous or poses any significant risk of recidivism. Research recently completed by the Sentencing Commission demonstrates that (i) recidivism rates decline relatively consistently as age increases, from 35.5% under age 21, to 9.5% over age 50[5]; (ii) women recidivate at a lower rate than men[6]; (iii) recidivism rates are lower for defendants who are or were ever married[7]; (iv) recidivism rates are lower for those without illicit drug use in the year prior to the offense[8]; and (v) offenders sentenced under the fraud, larceny, and drug guidelines are the least likely to recidivate.[9]

We do not dispute that some period of confinement is appropriate to provide just punishment and deter others, given the nature of the offense. However, there is no need to provide Ms. Tehrani with educational or vocational training, medical care, or other correctional treatment.

---

[5] *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004) (hereafter "Measuring Recidivism"), http://www.ussc.gov/publicat/Recidivism_General.pdf at 12 & Exh. 9.
[6] *Id.* at 11 & Exh. 9.
[7] *Id.* at 12 & Exh. 10.
[8] *Id.* at 13 & Exh. 10.
[9] *Id.* at 13 & Exh. 11.

Significantly, securing payment of restitution is not an issue in this case. The Government seized $148,000 of Ms. Tehrani's funds in conjunction with her arrest and Ms. Tehrani has agreed to forfeit those funds in order to satisfy her restitution obligation in this case. If the loss amount exceeds that figure, she will pay the balance. In addition, she has agreed to pay $5,000 to reimburse the expenses of investigation incurred by the Metropolitan Life Insurance Company in connection with this matter. There is no question about Ms. Tehrani's ability to pay these amounts.

Accordingly, the issue in this case is to determine what terms and conditions of confinement are sufficient, but not greater than necessary, to achieve the purposes of sentencing.

4. Consideration of the Guidelines

As discussed above, the guidelines at offense level 13 call for a prison term of 12-18 months' imprisonment. If the Court were to grant a one level downward departure for extraordinary acceptance of responsibility, as also discussed above, the guidelines range would drop to 10-16 months in Zone C and would allow a split sentence of half prison and half community or home confinement. U.S.S.G. § 5C1.1(d).

There are compelling reasons, however, to conclude that application of the guidelines would produce an overly harsh sentence in this case -- one that is greater than necessary to achieve the purposes of sentencing. First, Congress directed the Sentencing Commission in 1984 to ensure that the "guidelines reflect the general appropriateness of imposing <u>a sentence other than imprisonment</u> in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). The Commission

8

recognizes the need to act on this directive, but has not yet done so.[10] In 1991, a Commission working group proposed several alternatives to implement the congressional directive, including (1) a two-level reduction for offenders who had zero criminal history points and did not use violence or weapons in the instant offense; or (2) allowing first offenders access to probation or other alternatives to prison.[11] In this case, a two-level reduction for Ms. Tehrani would potentially drop her to offense level 10 in Zone B, which would result in a range of 6-12 months and permit the use of community confinement or home detention to satisfy the confinement requirement. U.S.S.G. § 5C1.1(c).

Furthermore, offenders are most likely to recidivate when their sentence is straight prison, as opposed to probation of split sentences.[12] In 1994, the General Accounting Office recommended intermediate sanctions for low-risk offenders at a lower cost to the taxpayers.[13] And almost half of all district court judges surveyed in 2002 urged greater availability of non-prison sentences for theft, larceny, embezzlement, and fraud offenders in order to meet the purposes of sentencing set forth in § 3553(a)(2).[14]

     5.    An Appropriate Sentence in this Case

For the reasons discussed above, we respectfully submit that a sentence of imprisonment at a FCI is unnecessary and inappropriate in this case. Instead, we submit that confinement effectuated through a split sentence better serves the ends of sentencing here.

Other courts have not hesitated, after *Booker*, to impose split sentences in appropriate

---

[10] *Recidivism and the First Offender* (May 2004), http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf at 1-2.
[11] *Id.* at 3.
[12] *Measuring Recidivism* at 13 & Exh. 12.
[13] U.S. General Accounting Office, *Sentencing: Intermediate Sanctions in the Federal Justice System* (1994).
[14] U.S. Sentencing Commission, Survey of Article III Judges on the Federal Sentencing Guidelines ES-5-6 (2003), http://www.ussc.gov/judsurv/execsum.pdf.

cases beyond the narrow confines established by the guidelines. For example, in *United States v. Anderson*, 365 F.Supp.2d 67 (D. Me. 2005), the court imposed an 18-month split sentence, thereby using "Zone C devices for the 18-month Guideline sentence." *Id.* at 69. The court concluded that "[a]n additional 9 months in prison would not result in significantly greater community protection than the 9 months home detention with electronic monitoring ... and the other conditions I have ordered." *Id.*

Likewise, in *United States v. Givens*, 2006 WL 3390752 (D. Neb. 2006), the court imposed a sentence that effectively amounted to two years, split between incarceration and home confinement. The court noted that, because the defendant had never previously been incarcerated, a limited period of confinement "should be sufficient to impress upon him the seriousness of the offense." *Id.* at *6.

In *United States v. Devoy*, 2005 WL 1563337 (E.D. Wis. 2005), a mail and wire fraud case arising out of defendant's scheme to defraud her employer, the guidelines called for a prison term of 12-18 months. The court concluded that this was slightly greater than necessary to satisfy the purposes of sentencing and instead imposed a split sentence of 12 months that was effectively one level below that range. The court noted that its sentence varied only slightly from the guidelines and would not create unwarranted disparity. *Id.* at *5.

Finally, in *United States v. Repp*, 2006 WL 3692463 (E.D. Wis. 2006), the guidelines called for a range of 10-16 months in Zone C. The government advocated a sentence at the low end of the range, split into half prison and half community confinement, while the defense requested a non-guideline sentence of probation. The court imposed a sentence of six months home confinement followed by probation. The court concluded that home confinement was an adequate substitute for imprisonment that would sufficiently punish the defendant, promote

respect for law, and deter others. *Id.* at *2.

In this case, we submit that a split sentence in the range of 8-12 months would be appropriate. We ask the Court to impose a term of confinement divided between a community corrections center and home confinement. There is no need in this case for a period of imprisonment at a FCI in order to sufficiently punish Ms. Tehrani, promote respect for the law, and deter others. Indeed, were the Court to impose a sentence of 12 months split between a halfway house and home detention, Ms. Tehrani would actually be required to serve more time (12 months) than she would under a straight sentence of imprisonment for a year and a day (which would result in only 10 months incarceration with good conduct time credit). This sentence would vary only slightly from the guidelines and would not create any unwarranted disparity. In addition, the Court should impose an appropriate fine and period of supervised release.

        Respectfully submitted,

        /s/ Steven D. Gordon
        Steven D. Gordon, Esq.
        District of Columbia Bar No. 219287
        HOLLAND & KNIGHT LLP
        2099 Pennsylvania Avenue, N.W., Suite 100
        Washington, D.C. 20006
        Telephone: (202) 955-3000
        Fax: (202) 955-5564
        Email: steven.gordon@hklaw.com

        *Counsel for Defendant*